John Manuel *against* William G. Campbell.

Error *to Pulaski Circuit Court.*

The rules for the construction of conditions in covenants, laid down by Sergeant Williams, in his note to *Pordage vs. Cole,* recognized and applied.

Where, by articles of agreement between C. and M., C. covenanted, in consideration of the sum of money and other considerations after mentioned, to build a saw-mill for M., and do all the work necessary to put it in full operation, without unnecessary delay, to the best of his knowledge, skill, and ability; and that he would not, during the time, absent himself, or do any work for any other person, without the consent of M.; and M. agreed to pay him $260 immediately on the completion of the work; the building of the mill is a condition precedent to the payment.

The further covenants of M. to board C. during the work, to find and pay a hand to assist in framing and planking, and to find hands to assist in raising the mill, are concurrent and dependent covenants.

The fact that a party remains in possession of a mill built for him on his own land, does not prove an acceptance of the work; for he could not divest himself of it, without surrendering a portion of his freehold.

In an action by C. upon such covenant as is stated above, in which he charges M. with a refusal to board him, &c., he must show that, up to the time of such refusal, he had himself complied with every thing which on his part he had promised to do.

Upon doing that, he could claim the stipulated price; for M. being in such case in fault, would be compelled to conform to the covenant, and pay the price.

In an action of covenant on such an instrument, in case it is ascertained *that the work* was not done in a workmanlike manner, or in the manner specified in the contract, C. can recover nothing for the actual or reasonable value of his labor. He must recover on the covenant, or not at all.

The parties have made the contract the law by which they are to be governed, and have fixed the criterion of damages to which C. is entitled; and a jury cannot annul the contract, by giving damages commensurate with the labor.

This is not so in the cases where contracts have been enlarged, changed, or rescinded, by mutual consent, or where extra work has been done, in which cases the party may claim a reasonable compensation, or a *quantum meruit,* in assumpsit.

Where a mechanic contracts to do work to the best of his knowledge, skill, and ability, the obligation is imposed on him to do it in a workmanlike manner. The offer to do the work, pre-supposes the capacity.

Every award should be so plainly expressed, that there may be no uncertainty in what manner and when the parties may put it into execution, but that they may certainly know what it is they are to do. An uncertain award is useless.

Campbell complained of Manuel, in covenant. The conditions of the covenant sued on, as set out in the declaration, were, that *Campbell* agreed that he would, as soon as could reasonably be done, frame and build for *Manuel* a saw-mill, with all the apparatus and machinery necessary and requisite to the full operation of said saw-mill, near the dwelling-house of Manuel; and would well and truly do and perform all the work of said mill, requisite to putting the same in full operation, without unnecessary delay, and to the best of his knowledge, skill, and

Manuel *against* Campbell.

ability; that he would not, during the time of building said mill, at any time, absent himself from building the same, or do any other work for any other person or persons in his trade, without the consent of Manuel. And Manuel covenanted to pay Campbell two hundred and sixty dollars in money, immediately on the completion of the mill; to board him during the time of his employment; to feed and pay one hand to assist in framing and planking the mill, and to find hands to assist in raising it.

The declaration then alleged that Campbell had performed and kept every portion of the covenant on his part; and assigned as breaches, that Manuel did not feed and pay a hand to assist in framing and planking the mill, or find hands to assist in raising it, although Campbell commenced and continued to frame and build the mill specially as stated in the covenant, until he was hindered and obstructed by Manuel, who refused to permit him to complete it, refused to board him, and to find hands, &c.; that Campbell did not absent himself, or work for any other person, without the consent of Manuel, but was always ready, and offered to perform all his covenants; that Manuel has failed to pay the sum of $260 agreed on, or the penal sum of five hundred dollars, &c.

To this declaration Manuel pleaded several pleas:

*First*, That Campbell did absent himself for ten days, without Manuel's consent, and during that time refused to do any work.

*Second*, That Campbell did not frame and build the mill, with all apparatus and machinery necessary and requisite to its full operation, or well and truly do and perform all the work of the mill, necessary and requisite to put the same in full operation, without unnecessary delay, and to the best of his knowledge, skill, and ability, until he was hindered and obstructed by Manuel, but refused to do it, and to complete and finish it.

*Third*, That Campbell did not do or perform all or any of the work of said mill, requisite to putting the same in full operation, according to the best of his skill, knowledge, and ability; but so negligently and unskilfully did said work, and in so unworkmanlike a manner, that it was entirely useless and worthless.

*Fourth*, That Manuel had paid the whole sum of $260.

Manuel *against* Campbell.

*Fifth,* That he did board Campbell, according to the covenant.

*Sixth,* That he did find and pay a hand to assist in framing and planking the mill; and, ·

*Seventh,* That he did find hands to assist in raising the mill.

To the four last pleas, which concluded to the country, Campbell joined issue. To the first, second, and third, he filed replications, specially denying in terms the allegations of each, concluding to the country; and to each of these replications the defendant Manuel joined issue.

At the March Term, 1840, the case was tried, on these issues, by a jury, who found for Campbell $70, for which judgment was rendered. The bill of exceptions sets out all the evidence in the case, which is as follows:

*Jones,* witness for Campbell, stated that, in the spring of 1836, Manuel came to him and told him that Campbell had engaged to build a mill for him, and had not done it; that they had agreed that Campbell should quit, and leave it to Stephen Cotter and Jones what Manuel should pay him. Cotter and himself then examined the mill. Manuel said he wanted them to make a final settlement between him and Campbell. That two receipts, one for $80 and the other for $15, were produced, and admitted by Campbell to be correct; and Campbell refused to admit certain accounts which Manuel had against him, They awarded that Manuel should pay Campbell $90. The lower works of the mill were under water, so that they could not see them. The upper works did not look well. Thought they had been put together when the timber was green. Manuel had before told him that the frame was good, or would answer; but it was not good. Did not see any good work about the mill. The running gear was bad, and he did not consider the work to have been done in a workmanlike manner. Manuel said that the mill had been put in according to his directions, but that Campbell had not done the planking faithfully.

Stephen Cotter stated the same. He said that he understood that the award was to be final, and that it was on that account Campbell quit working at the mill. That the work was very indifferent, and not done in a workmanlike manner; that the running gear was very indifferent, the carriage bad, and the running gear would not carry

Manuel *against* Campbell.

on the work to any purpose. That if any body had made the mill, and given it to him, he would not have had it. That he has had experience in such matters, and a man would lose money in running such a mill.

Felix G. Peyton stated that, in March or April, 1836, Campbell sent word by him to Manuel, that he wanted to finish the mill, and wished him to get the materials. He delivered the message, and Manuel said that Campbell had not done the work to suit him, (or, as he wanted it), and should not finish it; that Campbell was a damned rascal, and he would get the materials when he got ready. That Manuel once told him that his mill had braces enough in the frame, and that the flutter wheel, which he had been compelled to have made of unseasoned timber, answered very well, and was the only thing about the mill which did him any service. Had seen Manuel seasoning some timber, obtained from Danner's mill, with which, he said, he was obliged to put up, because he had been unable to get seasoned timber.

James Mills stated, that he was at Manuel's when Campbell was making the rag wheel, and told Manuel that he would not have it made of unseasoned timber. Manuel said that he could not help it; that he had got it from Danner's mill, and had been seasoning it three or four days, and that the wheel would do till he could get the mill going, and saw timber himself for another. Manuel said, a day or two before the arbitration, that Campbell was not at work at his mill; that he was a damned rascal, and should have nothing more to do with it. Manuel told him that he had to have his wheel and running gear made out of the best timber he could get. Was at the mill a week or ten days after she started, and Manuel said she cut as fast as Fisher's mill, and seemed satisfied with her.

This was all the evidence on the part of the plaintiff below. On the part of the defendant, George Brodie stated, that he was employed by Manuel to build a grist-mill; and being himself a millwright, he frequently examined the saw-mill spoken of, repaired it, and instructed Manuel how to have it repaired. It was a very poor mill. The frame was pretty good, but as to the running works, he would rather have had the timber of which they were made. The defects were prin-

cipally in the plan and workmanship, though a part of the fault was, that unseasoned timber had been used. The lower works, which are generally under water, and are made of green timber, were very poor—so poor that the mill would not saw fast enough to furnish timber for building the grist-mill. The iron bands of the cranks had bursted, and such of the upper works as do not require to be made of seasoned timber, were very bad—wretched! The machinery-was so bad that it would not feed the saw, and Manuel had to help with a crow-bar. The gudgeons were not long enough, and would not stay fast. It is the duty of the millwright to instruct his employer how to get every thing to be used in building the mill. A good deal of the fault was in the gudgeons and carriage, and in the cogs not being firm set, or washing well. The cogs are small pieces of hard wood, about an inch square, and there is no difficulty in getting them of seasoned wood. The rag wheel had fallen through, but witness did not know the cause. Danner had done some work on the flutter wheel—put a band on it, and wedged it. Manuel had sawed very little with the mill.

Danner stated that, in the winter of 1836–7, he repaired the mill for Manuel; that it was in a very poor condition, and could not work at all. The crank had come out, and the crank end of the wheel had fallen down. It was poor work: part of the lower works did very well, and part of it was very poor. The water-pitch, water-breast, and water-gate were poor work. They were out of place. The water-pitch had split for want of braces, and was torn out. The upper works were loose and shackling. Had to make a new backing wheel and trunk. The wheel which was there when witness went there, would not back at all. All this portion of the work is always made of green timber. There were no hauling-up works or hauling-up wheel to the mill. Witness made a hauling-up wheel, for which Manuel gave him fifty dollars, it having been commenced by another workman. If the hauling-up wheel and works had been put in, of the same kind of work as the rest of the mill, it would have been worse for Manuel. Manuel had sawed as long as he could, and had had to tinker at the mill all the time, to keep her going at all. A badly made mill is worse than no mill at all.

S. M. Knowles stated that, before the arbitration, Campbell quit

working on the mill, and told him that he had quit there, and never would go back. Witness told him that if he did not complete the mill, Manuel would never pay him. Campbell did not seem to care whether he paid him or not. Does not think he worked at any other mill during that time. Campbell said there had been some disagreement between him and Manuel, or that Manuel had not complied with his contract.

F. G. Peyton stated that, in January or February, 1836, Campbell quit work on Manuel's mill. He did some work on Mills' mill, but whether it was before or after the arbitration, he could not recollect.

The defendant, Manuel, then read in evidence two receipts signed by Campbell, one for $80, and the other for $15; and this being all the evidence, he moved the Court to instruct the jury:

" That if they believe that the work by said contract agreed to be " done, was not done by said plaintiff in a workmanlike manner, or in " the manner specified in said covenant, the plaintiff cannot recover, " unless the defendant accepted said mill in discharge and satisfaction " of the covenant aforesaid; and that the mere fact of his remaining " in possession of said mill, does not prove that he accepted it in dis- " charge and satisfaction of the covenant;" and,

" That the jury cannot make a deduction, and give a verdict for the " plaintiff, for a balance which they may think should be reasonably " allowed him for his labor, in this action, in case they believe the work " not to have been done in a workmanlike manner, or not in the man- " ner specified in the covenant; but must, in such case, find for the " defendant."

Each of these instructions the Court refused to give; and Manuel excepted.

PIKE, TRAPNALL, and COCKE, for plaintiff in error:

We contend that all the instructions asked for were correct, contained the law applicable to the case, and should have been given to the jury.

As to the first instruction, we remark that it was averred by the defendant below, in his third plea, that Campbell so negligently and unskilfully did the work, and in so unworkmanlike a manner, that it

Manuel *against* Campbell.

was entirely useless and worthless. Let us now inquire what are the authorities applicable to and sustaining the first instruction asked.

Starkie lays down the law on this subject, as follows: " Where the plaintiff, under a special agreement, has executed the work improperly, since he has not done that which he engaged to do, and which is the consideration of the defendant's promise to pay, it seems to be now settled that the plaintiff must recover, if at all, upon the *quantum meruit*, and that he cannot recover more than the value of the work and ma- terials to the defendant. And where the plaintiff has executed his work so ill that the defendant has derived no benefit from it, or none which exceeds in value the sum which he has paid, the plaintiff is not entitled to recover at all, even for the labor and materials." 2 *Stark. Ev.*, 97, 98. See *Basten vs. Butter*, 7 *East.*, 497; before which case, it had been held that the remedy of the defendant was by a cross action.

In *Ellis vs. Hamlen*, 3 *Taun.* 52, a builder brought an action against his employer, upon a special contract for building a house, of materials and dimensions specified in the contract, to recover the balance of the sum therein agreed on. It was proved, in defence, that the plaintiff had omitted to put into the building certain joists and other materials, of the given description and measure. The plaintiff's counsel then resorted to a *quantum valebant* count in the declaration for work, labor, and materials; but *Mansfield, C. J.*, said: " Suppose you had come hither upon a *quantum valebant* only, could you have recovered on it? Certainly not." And again: " The plaintiff has properly declared on his special contract, and he has shown and proved that he made such a contract, and has received much money on it. He cannot now be permitted to turn round and say, I will be paid by a measure-and-value price." Again: " It is said he (the defendant) has the benefit of the houses, and therefore the plaintiff is entitled to recover on a *quantum valebant*. To be sure, it is hard that he should build houses and not be paid for them; but the difficulty is to know where to draw the line; for if the defendant is obliged to pay in a case where there is one de- viation from his contract, he may equally be obliged to pay for any thing, how far soever distant from what the contract stipulated for." And the plaintiff was accordingly nonsuited.

*Taft vs. Inhabitants of Montague*, 14 *Mass.* 282, was an action of assumpsit. One of the counts was on a special contract, by which the plaintiff was to build a bridge, for a certain price, in a manner particularly described. The proof was, that he built the bridge, but not in a workmanlike manner. It stood, however, from the fall of 1810 till the spring of 1812, being occasionally repaired, and then one arch fell down. In 1814, the other arch fell in. The abutments were proved to have been built principally of cobble stones, not well laid together; and in one arch, the stones were not bound together at all. The plaintiff proved that he laid the foundations of the abutments as low as was requisite, and the bridge was as wide, high, and long as it should have been. But it was proven that the stones were not of proper shape and size, and were not laid and bound together in a workmanlike manner, though proper stones could have been procured, and the understanding was that such stones were to be used.

The Court said that it would be a reproach to the law, if the plaintiff could recover the stipulated price of the work which he undertook to perform; and therefore decided that the defence was sufficient under the special count. See *Crowninshield vs. Robinson*, 1 *Mason*, 93; *Templar vs. McLachlan*, 5 *Bos. & Pul.*, 136.

In *Morford vs. Mastin*, 6 *Mon.*, 612, this question was considered by the Supreme Court of Kentucky. They said: "Here there is a general performance of the stipulation, agreeably to its general outlines; but in the manner, or rather in the quality, of the performance, proved as to part of the work, there is a failure. Is this such a failure as totally to preclude all recovery in this action?" (which was covenant). "Will the failure to complete the work in a workmanlike manner, in a small part thereof, when the greater part is well done, destroy for ever the right of action on the contract, and leave the other side to enjoy the labor already done? To answer these questions in the affirmative, may, at the first blush, seem rigid and severe. But still, we apprehend, such an answer must be given; and the evils arising from its apparent rigor, will be partially compensated by the preservation of good faith in performing special agreements." * * "The receiving the work (say the Court, the same being done on a house,) will make no difference. He could not reject it, without abandoning his estate,

on which it was situated. It was already part of his freehold, and he received every part as it progressed." \* \* \* " The acceptance of work that a party cannot reject, *as a building upon his land*, does not bind the employer to waive the precedent condition, and permit the undertaker to recover the precise sum. Nor can he be allowed to recover in this action a *quantum meruit*, after failing to prove the preceding condition." See also *Farnsworth vs. Garrard*, 1 *Camp.* 38; *Onell vs. Smith*, 1 *Stark. C.*, 107; 3 *Stark. Ev.*, 1769; *Dana vs. Boyd*, 2 *J. J. Marsh*, 593; *Hayward vs. Leonard*, 7 *Pick.*, 184; *Champlin vs. Rowley.* 18 *Wend.*, 187.

The authorities above quoted, it is submitted, conclusively show that both the instructions which were refused by the Court, ought to have been given. The evidence in the case conclusively shows, not only that the work was done in an unworkmanlike manner, but that it was so done as to be almost, if not entirely, worthless; and that those parts of it which were made of green timber, were equally as bad where green timber was proper as where it was not.

Upon the evidence given, it is certainly plain that the plaintiff below was not entitled to recover in covenant, however he might have done if he had brought assumpsit; and *if this be the case, the instructions were applicable, and, being correct law, were improperly and erroneously refused.*

FOWLER, *Contra:*

The first instruction asked for by Manuel, in part, is an abstract proposition, and has no relation to the facts detailed in evidence; and the residue is a proposition to charge upon a matter of fact, which belongs exclusively to the jury, and over which a Court has no legal control. For a Court to state to a jury that such a thing proves or does not prove a particular fact, it is a charge upon a matter of fact, and an invasion upon the constitutional province of the jury; consequently, for the Court below to have instructed the jury that the *mere fact* of Manuel's remaining in possession of the mill, *did not prove* that he accepted it, &c., would have been improper, and was rightfully refused to have been given. And even if the Court below had given such instruction, the evidence would have fully authorized the same

Manuel *against* Campbell.

finding by the jury; because the facts of a submission to an award by Manuel, several payments made by him to Campbell, and other circumstances detailed, go clearly to prove his acceptance of the mill, independent of his mere possession. Upon the evidence on this view of the case, Campbell was entitled to recover. On another, he was equally entitled—that he performed in part, &c., and until prevented by Manuel, &c. See 4 *Cranch,* 239; 2 *Cond. Rep.,* 98; 1 *Bibb,* 389; 4 *Bibb,* 1; 1 *Lit. Rep.,* 3; 1 *Pet. Dig.,* 40. Whenever a man can have an action upon an instrument under seal, *he must resort to it.* See above authorities, and 1 *Ch. Pl., passim.*

Manuel was bound to pay Campbell for his labor, and the latter could have no other remedy than on the covenant. Manuel never denied that Campbell was entitled to compensation, until after suit was instituted. And the very nature of the contract itself, taken in in connection with the testimony, shows clearly, and by admissions of Manuel, too, that the defects in the work done were as much attributable to Manuel as to Campbell. Manuel was to furnish the materials. The lumber furnished by him was not seasoned; was not such as good work could have been made of; and it is in proof that he admitted the fact, and said that it would do, or he would have to make out with it, until he could cut lumber and season it. It could not then be reasonable for him to be allowed, either in justice or according to legal technicalities, to take advantage of his own wrong.

The Court will further perceive that there is no undertaking, or allegation, or issue upon the point, that Campbell was to build the mill in a "*workmanlike manner.*" The first we hear of it, is in the instructions asked for by Manuel. Campbell was only bound to do the work according to the *best of his skill and ability;* and for aught that appears, he fully complied with such undertaking. Thus far, then, the instructions were irrelevant, and properly refused.

DICKINSON, J., delivered the opinion of the court:

It is not denied by the counsel for the defendant in error that the mill was not finished; but it is contended that the facts of submission to an award by Manuel, the payments made by him to Campbell, and other circumstances detailed in evidence, go to prove his accep-

tance independent of mere possession.    It is necessary for us to ascertain, first, the nature of the contract, and whether the performance of Campbell's part of the agreement was a condition precedent to the payment by the defendant, or whether the covenants are mutual and independant.    Sergeant Williams, in his note to *Pordage vs. Cole*, 1 *Saund.* 320, *note* (4), remarks that many of the old, as well as modern cases are decided upon distinctions so nice and technical, that it is difficult to lay down any general principle by which to determine what covenants are independent, and what dependent.    The only court rule is, to construct covenants according to the meaning of the parties, and the good sense of the case.    To ascertain *that intention*, some general rules are adduced from adjudged cases:    1st.  If a day be appointed for the performance of any act, and such a day is to happen or may happen before the performance of the act which is the consideration of the first mentioned act, then the covenants are considered mutual and independent, and an action may be brought without averring performance of the consideration; for it appears that the party relied upon his remedy, and did not intend to make the performance a condition precedent, and so it is when *no time* is fixed for the performance of the consideration.    2d.  But when the day or time appointed for the payment of money, or performance of an act is to happen after the thing which is the consideration is to be performed, no action can be maintained before performance of the condition.    3d.  When a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be paid in damages, it is an independent covenant, and an action may be brought for a breach of the covenant without averring performance.

And when a person has received a part of the consideration for which he entered into agreement, it would be unjust that because he has not had the whole, he should therefore be permitted to retain that part, without either paying or doing any thing for it; and therefore, the law obliges him to perform the covenant on his part, and leaves him to his remedy—to recover damages for not receiving the whole consideration.    4th.  But when mutual covenants go to the whole consideration, on both sides, then they are mutual conditions and dependent.

When two acts are to be done at one and the same time, neither party can maintain action without performance, or an offer to perform his part. Under what head ought this contract to be classed? We think there is no difficulty in putting a proper construction upon it. The building of the mill is a condition precedent to the payment of it; and when the mill is finished, according to his stipulation, all of Campbell's covenants are necessarily fulfilled; while Manuel's covenants, to find and pay one hand, &c., as they must be performed while the work is progressing, are necessarily concurrent and dependent upon Campbell's. Each has charged himself with certain specified duties, for the non-performance of which an action of covenant will lie; or the party can bring debt upon the penalty, and assign breaches; but he cannot go out of his contract. He must recover, if at all, upon it. The plaintiff, in his declaration, avers performance, until hindered and prevented by the defendant; who, on his part, pleads performance of all his covenants, and non-performance by the plaintiff. He also pleads payment. The execution of the contract, and the payment of ninety dollars, are admitted. Manuel denies all liability. On the trial of this case, a verdict was given to Campbell for seventy dollars: to secure it, the plaintiff in error sued out his writ to this Court. The evidence adduced upon the trial, is substantially correct, as stated by the counsel of the plaintiff in error. The whole is set out in a bill of exceptions; also, the objections raised to the judgments: that the Court refused to instruct the jury, 1st, " That if they believed that the work by said contract agreed to be done, was not done by said plaintiff in a workmanlike manner, or the manner specified in said covenant, the plaintiff cannot recover, unless the defendant accepted said mill in discharge and satisfaction of the covenant aforesaid; and that the mere fact of his remaining in possession of said mill, does not prove that he accepted it in discharge or satisfaction of the covenant. 2d, And also, that the jury cannot make a deduction, and give a verdict for the plaintiff, for a balance which they may think should be reasonably allowed him for his labor in this action, in case they believe the work not to have been done in a workmanlike manner, or not in the manner specified in the covenant; but must, in such case, find for the defendant."

The mere fact of remaining in possession, proves nothing; for Manuel could not divest himself of it without surrendering a portion of his freehold, which he was not bound to do. The residue of the instructions asked for, will be considered together. Here is a contract under seal, entered into, by which Manuel stipulates to pay Campbell a certain sum, upon certain conditions, second, by a penalty. Campbell avers performance, or what he contends is equivalent to performance, and therefore claims the sum stipulated to be his in that event. The parties themselves have made the contract the law by which they are to be governed, and have fixed the criterion of damages to which Campbell is entitled; and a jury cannot obviate the effects of such a contract, by giving damages only commensurate with the labor. The sum stipulated to be paid for the whole, might be greatly over the real value of that kind of work; or, on the other hand, if that price, so agreed upon, had been too low, by disregarding the terms of the agreement, and rating the labor at the ordinary value of such work, it might, upon the same principle, if only partly done, carry it beyond the price agreed upon for the whole when completed. In neither event, would such a rule have an equal bearing upon the parties, or be consonant with justice.

If there is no fixed sum agreed upon, then the rule is, that he shall have a reasonable price, commensurate with the labor done, allowed him. It is not so much of an inquiry whether Manuel complied with his contract, as whether Campbell, the party claiming to be injured, fulfilled his own covenants. For the breach of good faith on one side, will not aid him who is equally guilty. Campbell must first bring himself within the equity of the law, before he can claim to have it enforced upon the other. In conclusion, Campbell must show that, up to the time when he charges Manuel with a refusal to board him, &c., he had himself complied with every thing which on his part he had promised to do. Then, and not till then, can he claim the price stipulated to be paid him; and then, he is entitled to the whole of it; for, if Manuel was in fault, and threw Campbell out of employ, and compelled him to incur losses and expenses, he has no right to complain upon being required to conform to his contract.

This is not like many of the cases reported in the books, where

contracts are enlarged, changed, or rescinded, by mutual consent, or where extra work is done, for which the party claims a reasonable compensation upon a *quantum meruit* in assumpsit, without relying upon the stipulations expressed in the contract.

The counsel for the defendant in error, contends that he only contracted to do the work to the best of his "knowledge, skill, and ability," and objects to the introduction of the word " workmanlike" in the instructions asked for. This objection cannot be sustained; for when a party contracts to do a certain piece of work in his " trade," he is presumed to be both able and willing to do it in a workmanlike manner: the very offer to do the work, pre-supposes capacity. To say that a builder, after the destruction of the materials, and the expenditure of his employer's means, should be permitted to shield himself from damages, upon the ground that he only contracted to the best of his knowledge, skill, and ability, and that he is not responsible if the work is not done in a workmanlike manner, would be a fraud which the law will not countenance. If the contractor doubts his own capacity, he must provide for it in his contract; otherwise, if he uses general expressions, he must be governed by general rules: *Bull. N. P.*, 139; 10 *Mass.*, 287; *Stagg vs. Munro*, 8 *Wend.*, 399; *Northrop vs. Northrop*, 6 *Com.*, 296; *Lawrence vs. Dale*, 3 *J. C. R.*, 23; *Jewell vs. Schroeppel*, 4 *Cowen*, 564.

The award of the arbitrators ought not to be considered; for the object of submitting matters of contract to arbitrators, is for the purpose of obtaining a speedy and final determination of the matters in dispute, with less delay and expense than by having recourse to the ordinary tribunals of the country. It is the intention of the parties, in submitting their disputes, to have something ascertained, which was before uncertain; and it is a general rule, that the award ought to be so plainly expressed, that there may be no uncertainty in what manner, and when, the parties may put it into execution, but that they may certainly know what it is they are to do. An uncertain award is useless.

The award here is neither certain nor conclusive, but indefinite, unfinished, and not final; it can therefore have no bearing upon either of the parties. The testimony of the several witnesses introduced,

43

does not clearly show either performance or its equivalent upon the part of Campbell, nor the acceptance of the work by Manuel. Upon the whole, we are of the opinion that the first instructions asked for were rightfully refused by the Court, as too broad and general; for it is a sound principle, that he who prevents a thing from being done, shall not avail himself of the non-performance he has occasioned; but that the Court erred in not giving the second instructions, as moved by the plaintiff in error; and as this Court cannot know what influence the refusal so to instruct may have had upon the finding of the jury, the judgment is reversed.