COLEY *v.* GREEN.

5-2142                                    335 S. W. 2d 720

Opinion delivered May 30, 1960.

*William H. Drew,* for appellant.

*Spitzberg, Bonner, Mitchell & Hays,* for appellee.

ED. F. McFADDIN, Associate Justice. This litigation is for the proceeds of insurance money, and arises because a fire damaged the mortgaged premises. Green and wife, as mortgagors, were plaintiffs; and Coley and wife, as mortgagees, were defendants. The Trial Court rendered a decree in favor of the Greens and the Coleys prosecute this appeal.

O. T. Coley and wife owned a combination restaurant, truck stop, filling station, and motel, called "Twin City Diner", and located near Dermott. In March 1958 Coley sold the entire property and all furnishings to Green. The unpaid balance of the purchase price was $63,000.00, payable monthly for a number of years, and secured by a first mortgage on the real estate. Green was required to maintain fire insurance policies on the buildings, with loss payable clause in favor of Coley; and this requirement was performed by having policies in four insurance companies, being United States Fidelity & Guaranty Company, Federal Insurance Company, Hartford Fire Insurance Company, and Great American Insurance Company.

In September 1958 a fire materially damaged the two-story building called the "diner". The four insurance companies agreed that the total amount to be paid for the fire damage was $12,600.00. Coley then agreed with Green that the entire insurance money ". . . would be paid over to Mr. Green in the event the property was restored to as good a condition as it was prior to the fire". The four insurance companies issued and delivered drafts totalling $12,600.00 payable to Coley. Green undertook the repair work and after he had completed it to his own satisfaction he asked Coley to endorse and deliver the four insurance drafts. Coley refused, claiming that such repair work as Green had done did not restore the building as to as good a condition as it was before the fire.

Thereupon Green and wife instituted this suit against Coley and wife and the four insurance companies. The complaint was entitled, "Petition for Declaratory Judgment". The four insurance companies claimed that they were mere stake-holders and paid the $12,600.00 into the registry of the Court by interpleader (§ 27-816 Ark. Stats.) and they were discharged with attorneys' fees and costs. Trial in the Chancery Court resulted in a finding that Green was entitled to all of the $12,600.00 insurance money; and from that decree Mr. and Mrs. Coley prosecute this appeal, presenting the issues here discussed.

I. *Venue.* Appellants raise two points on venue. First, they claim that the Chancery Court did not have venue because of the provisions of Section 301 of Act 148 of 1959 (as now found in § 66-3234 Ark. Stats.). This case was filed in April 1959 and the decree from which comes this appeal was entered on October 26, 1959. Section 697 of Act 148 of 1959 provides that in certain situations, as here, the said Act did not go into effect until January 1, 1960. So there is no merit to this contention of the appellant.

The other phase of the venue claim of the appellants is an attempt to invoke § 27-615 Ark. Stats., which provides that when a defendant is summoned to appear in an action outside his own county and the action is dismissed against co-defendants resident of the county in which the action is pending, then, upon proper objection, no judgment can be rendered against the defendant non-resident of the county. The appellants state that the action was filed in Pulaski County; that the Coleys were residents of White County; that when the insurance companies paid the money into the Court they ceased to be parties defendant; and, therefore, the action should have been dismissed as to the Coleys. But the answer to the appellants' contention rests on two facts: (a) the insurance companies were not real defendants but were mere stake holders and any objection as to venue should have been made before answering; and (b) the answer did not raise the question of venue so the appellants have waived it. The complaint was filed on

April 7, 1959. On April 30, 1959 Mr. and Mrs. Coley filed an answer denying all allegations in the complaint and praying, ". . . that the Court order the proceeds herein paid as prescribed in Paragraph 8 of the complaint filed herein . . . and for all other relief to which the proof may show defendants to be entitled". There was no objection as to venue in the said answer. It was not until May 26, 1959 — nearly a month later — that the Coleys first raised any question of venue. The case of *Murdock Acceptance Corp.* v. *Spear,* 225 Ark. 948, 286 S. W. 2d 485, is ruling here. In a long line of cases this Court has held that a general appearance will subject the defendant to the Court's jurisdiction, even though the suit is in the wrong venue.

II. *The Merits Of The Case.* Coley agreed that Green could have all of the insurance money of $12,600.00 if Green restored the building to as good condition as it was before the fire. Whether the repair work done by Green reached such prescribed requirement is the real issue in this case. To state in detail the testimony of each witness would unduly prolong this opinion. The contractor making the repairs used only a small portion of the timbers and rafters that he had listed as necessary when he made the estimate for the insurance companies. He never removed the charred timbers between the first and second floors. Pictures made shortly before the trial clearly indicate that after the repair work was made, there remained holes and visible cracks in many places; and no claim is made that these defects existed before the fire. A careful review of the record convinces us that, while Green made some repairs to the premises, he spent not in excess of $8,000.00 toward making the prescribed repairs, and that he is entitled to only that amount of the insurance money.

We come then to the difficult question as to the power of this Court to apportion the insurance proceeds on the basis of the repairs made. The older cases hold that, when a special contract had been performed only in part, then there could be no recovery on a *quantum meruit* basis. *Simpson* v. *McDonald,* 2 Ark. 370; *Manuel* v.

*Campbell,* 3 Ark. 324. But over the years there has been a constant tendency to find a way to prevent the working party from losing his entire outlay. In *Selig* v. *Botts,* 128 Ark. 167, 193 S. W. 534, the Court in effect, divided the contract, and allowed recovery for the part that was performed; and in *Mitchell* v. *Caplinger,* 97 Ark. 278, 133 S. W. 1032, a contractor was allowed part recovery even though the owner had to make further expenditures to complete the building. The present litigation is in equity, and on appeal we try the case *de novo* on the record. The rules regarding restitution and unjust enrichment apply to the situation here. In 12 Am. Jur. 916 *et seq.,* "Contracts" § 352 *et seq.,* the text, in discussing acceptance of performance as basis for implied promise, reads:

"Under some circumstances, a *quasi* contract arises independent of the intention of the parties where a special contract has been partly performed, and such *quasi* contract is founded upon the doctrine of unjust enrichment. The basis of liability under a *quasi* contract resulting from part performance of a special contract is the benefit conferred upon a defendant by the part performance of a special contract, and not the detriment incurred by the plaintiff . . . In some cases language may be found to the effect that even though the contract has not been completed or has not been completed in accordance with its terms, the law implies a promise by the opposite party to pay if he has been benefited by such partial or insufficient performance . . . Under the strict common-law rule where a party failed to comply with an unapportionable agreement, he could not recover for what had been done. This rule has been so far modified that where anything has been done from which the other party has received a substantial benefit which he has appropriated, a recovery may be had based upon such benefit. The basis of this recovery is not the original contract, but a new implied agreement deducible from the delivery and acceptance of some valuable service or thing."

Coley allowed Green to undertake the restoration or repair, and has accepted the benefits of such as Green made. Green expended up to $8,000.00 in restoration or repairs and has accomplished that much benefit to the mortgaged premises. But Green's other expenditures were for matters such as pavement, additional bathroom, or other items which were not matters of repair or restoration. Green certainly could not use Coley's insurance money to make these other improvements; but, under the rules regarding restitution and unjust enrichment, Green is entitled to $8,000.00 of the insurance money, less all costs and expenses of this proceeding in both courts, and this includes the attorneys' fees paid for the interpleading by the insurance companies.

When Green makes proof that all labor and material items used in repairing the premises have been paid, so that there is no lien possible on the mortgaged premises, then Green will be entitled to the amount of money previously stated. The remaining $4,600.00 of the insurance money should be paid to Coley and applied on the mortgage indebtedness. This $4,600.00 is to be applied now on the final amount due, and Green's regular payments will be made each month until the balance of the indebtedness is fully discharged. The Chancery decree is reversed and the cause remanded, with directions to enter a decree and have further proceedings, as indicated in this opinion.