Ray PICKENS and Marie R. PICKENS *v.* Raymond R. STROUD, Individually and d/b/a RAYMOND STROUD LBR. CO., INC.

CA 82-319                                653 S.W.2d 146

Court of Appeals of Arkansas
Opinion delivered July 6, 1983

*Wright & Chaney, P.A.,* for appellants.

*Shaw, Shaw & Foster,* by: *Jerry Ryan,* for appellee.

MELVIN MAYFIELD, Chief Judge. Ray and Marie Pickens appeal from a judgment of the Polk Chancery Court in favor of the appellees in the amount of $8,914.82. The appellees are Raymond Stroud Lumber Company, Inc., and Raymond Stroud, individually.

The parties made a contract providing that appellees would build a home for appellants for the consideration of $50,000.00. This amount was to be paid in four payments: $5,000.00 when the contract was signed, $15,00.00 when the subfloor was down, $15,000.00 when the house was locked-in, and a final $15,000.00 payment when the house was completed. The first and second payments were made, but the third payment was not made and this case resulted.

Appellees claimed that the house was locked-in and when appellants did not agree and would not make the third payment, appellees stopped work and filed suit. At trial, when the evidence was completed, the chancellor announced that both parties had breached the contract. He said the appellees did not have the building locked-in, a term he found to mean that the windows and exterior doors would be installed, the plumbing and wiring would be roughed in, the walls would be up, and the roof would be on the building. But the judge found that appellants would not pay the third

payment until appellees did some things which were not necessary for the house to be locked-in. He said he suspected that meant that appellees were entitled to the fair value of the work performed, but he was not sure and he asked for briefs.

After briefs were furnished, the court filed a memorandum opinion in which he said that most of the work required to lock-in the house had been completed and that it would be inequitable to allow the appellants to gain the benefits of that work without paying for it, particularly since they were as much at fault as the other side. He then made findings with regard to the other evidence heard at trial.

That evidence had disclosed that after appellees had stopped work, the appellants had obtained another contractor to finish the house. This man testified that he charged appellants $27,000.00 to complete the job and $4,100.00 of that was for correcting defective work done by appellees. The appellants testified that they had paid $2,485.15 for bricks and $500.00 for lighting fixtures that went into the house; and there was evidence that the appellants had put labor and building material into the house at a cost of $33,906.58.

The judge's opinion stated that he thought the appellees' recovery should be based upon the percentage of their contract that they had completed and he fixed that at 80% for a base recovery of $36,000.00, considering "the cumulative testimony of all the witnesses, noting particularly the evidence reflecting the cost of labor and materials furnished by Mr. Stroud and the amount charged by Jon Murrell to complete the construction." From that $36,000.00 the judge allowed appellants to deduct the $20,000.00 in payments they had made to appellees, the $4,100.00 they had paid Murrell for correcting the defective work done by appellees, and the amounts appellants had paid for bricks and lighting fixtures, and he gave judgment for appellees against appellants in the amount of $8,914.82.

On appeal, the appellants first argue that the evidence does not support the chancellor's finding that they breached

the contract by refusing to make the locked-in payment. It is, of course, their position that the breach was solely by appellees and that their failure to perform released the appellants from further performance. While we do not think the judge's finding on that point clearly against the preponderance of the evidence, Civil Procedure Rule 52 (a), the view we take of the case makes it immaterial.

In D. Dobbs, *Handbook on the Law of Remedies* § 12.24, at 918-19 (1973), the author discusses the effect of a contractor's breach of a building contract and states that "under older doctrine, a contractor, even if his breach was only minor, could recover nothing at all because complete performance was deemed a condition" but that "this grim guillotine no longer cuts him off." The reasons for allowing recovery are then discussed and Dobbs says the doctrine of substantial performance will allow recovery subject to credit to the owner for his damages.

That doctrine is followed in Arkansas. *See Carter* v. *Quick,* 263 Ark. 202, 563 S.W.2d 461 (1978), and *Taylor* v. *Richardson Const. Co.,* 266 Ark. 447, 585 S.W.2d 934 (1979). However, Dobbs points out that the performance must be sufficiently substantial. We do not find that this matter has been considered by an appellate court in Arkansas, but in *Dixon* v. *Nelson,* 107 N.W.2d 505 (S.D. 1961), the court said this is a relative term and cited a case which held there had not been substantial performance where it was necessary to tear down and rebuild an entire wall. And in *Miles Homes, Inc. of Wisconsin* v. *Starrett,* 127 N.W.2d 243 (Wis. 1964), the court said substantial performance could not be determined by a mathematical rule relating to the percentage of the cost of completion but found that there had not been substantial performance where the cost to rebuild into compliance equaled 36% of the contract price.

In the instant case, we do not think there has been substantial performance, but we do not think that prevents the appellees from recovering. Dobbs also says that a contractor may, though in substantial breach, recover on a restitutionary theory, or on quantum meruit. Dobbs, *supra,* at 920-921. A case so holding is *Lowe* v. *Rosenlof,* 364 P.2d

418 (Utah 1961), where the plaintiff abandoned the concrete work on a construction job but the court said: "Although plaintiff is not entitled to the benefits of the contract, he is, nevertheless, entitled to payment on a quantum meruit basis for the work he did perform." *See also Burke* v. *McKee*, 304 P.2d 307 (Okla. 1956). The theory upon which recovery is allowed in those cases is to prevent unjust enrichment or as Dobbs says "the feeling that the landowner is not entitled to a windfall merely because he has contracted with a man who has breached his contract." Dobbs, *supra*, at 921.

This theory has been applied to allow recovery in Arkansas. In *Coley* v. *Green*, 232 Ark. 289, 335 S.W.2d 720 (1960), the court said:

> The older cases hold that, when a special contract had been performed only in part, then there could be no recovery on a *quantum meruit* basis. *Simpson* v. *McDonald*, 2 Ark. 370; *Manuel* v. *Campbell*, 3 Ark. 324. But over the years there has been a constant tendency to find a way to prevent the working party from losing his entire outlay. In *Selig* v. *Botts*, 128 Ark. 167, 193 S.W. 534, the Court, in effect, divided the contract, and allowed recovery for the part that was performed; and in *Mitchell* v. *Caplinger*, 97 Ark. 278, 133 S.W. 1032, a contractor was allowed part recovery even though the owner had to make further expenditures to complete the building.

In the case at bar, we believe the appellees are entitled to recover on a quantum meruit basis and, although not so designated, we think that is really the basis the chancellor attempted to use. However, we do not think he used all the evidence necessary to properly fix the amount of recovery.

In *Beeman* v. *Worrell*, 612 S.W.2d 953 (Tex. Civ. App. 1981), there is an extended discussion of the method of determining the amount that may be recovered in quantum meruit by a building contractor who has breached his contract without substantial performance. In the first paragraph of the opinion, the court said:

The trial court apparently awarded the market value of the house as constructed, less the owners' payments and the cost of remedying certain defects . . . . We hold that this amount was properly determined to be the net benefit to the owners from the contractor's part performance.

*See also Tannhaeuser Co.* v. *Holiday House,* 83 N.W.2d 880 (Wis. 1957), where the court did not allow recovery because the plaintiff did not meet its burden of showing "how much the unlighted sign had benefited the defendant. In *Coley, supra,* the Arkansas court quoted with approval from American Jurisprudence that "the basis of liability under a quasi contract resulting from part performance is the benefit conferred upon a defendant." Of course, as *Beeman* v. *Worrell* points out, the amount of recovery should not exceed the contractor's reasonable expenditures for labor and materials.

In our case, the trial judge made no determination of the value of the house as constructed nor did he in other manner fix the amount of benefit that appellees' part performance conferred upon the appellants. He simply found that appellees had completed 80% of their contract for a base recovery of $36,000.00. It appears that the judge used 80% of the contract price of $50,000.00 to arrive at $40,000.00 and deducted the approximate $4,000.00 cost of correcting appellees' work to arrive at the $36,000.00 figure. This computation also overlooks the $22,900.00 that appellants paid Murrell (over and above the $4,100.00 for correcting deficiencies) to complete the house. That figure, the appellants testified, was for Murrell to complete to the same specifications of the Stroud contract. They said they did add a closet in the basement and put a different covering on the kitchen cabinets, but paid extra for that.

Equity cases are tried de novo on appeal, and while findings of fact are not set aside unless clearly against the preponderance of the evidence, where the chancellor has made no factual decision, or where the evidence is undisputed, we render the judgment, on the record made in the trial court, which the chancellor should have rendered.

*Ferguson* v. *Green,* 266 Ark. 556, 587 S.W.2d 18 (1979). No one testified to the value of the house at the time the appellees stopped work or after Murrell had completed it. Dobbs, however, states that value to the landowner can be measured in several ways.

> For example, if the contractor promises to build a house to certain specifications for $50,000 and ceases to work when it is partially completed, and the landowner can get the house completed according to the same specifications for $20,000 it is reasonably clear that the benefit to the landowner of the work done was $30,000. Dobbs, *supra,* at 922.

And in *Coley, supra,* the court found that the amount expended accomplished that much benefit to the property.

Although the usual practice in chancery appeals is to end the controversy by final judgment here, *Ferguson* v. *Green, supra,* also holds that the appellate court does have the discretionary power to remand a chancery case for further proceedings, either on the whole case or on certain issues. It is obvious from the record that the parties did not attempt to establish the benefit that Stroud's part performance conferred to the house or the land upon which the house is situated. Under those circumstances, rather than attempting to fix that benefit from the evidence in the record by using some method such as used in *Coley* or suggested by Dobbs, we have concluded to remand for that issue to be decided by the trial court after affording the parties an evidentiary hearing. The court shall then enter the appropriate judgment based upon that hearing and the record previously made.

Reversed and remanded for further proceedings consistent with this opinion.