TECH-NEEKS, INC., ET AL *v.* KELTON FRANCIS
AND JUANITA POE, ETC.

5-4021                                    407 S. W. 2d 938

Opinion delivered November 14, 1966

*Cockrill, Laser, McGehee & Sharp* for appellants.

*Rose, Meek, House, Barron, Nash & Williamson,* for appellees.

CARLETON HARRIS, Chief Justice. Appellant, Tech-Neeks, Inc., entered into a contract to construct a water system for the town of Biscoe, Arkansas. The company entered into a sub-contract with Kelton Francis and Juanita Poe, d/b/a Francis and Poe, for the latter to perform certain portions of the contract, consisting of trenching and laying pipe, payment to be made on the basis of a unit price according to certain plans and specifications, appellees to furnish tools, equipment,

labor, trucks, etc. The contract further provided that if satisfactory performance was not rendered by the subcontractor, Tech-Neeks reserved the right to take over the job and complete same, "deducting expenses incurred from the above contract." During the period from November 21, 1964, to January 30, 1965, appellees performed pursuant to the contract, and were due for that period an amount totaling $7,952.30. Appellees were entitled to be paid by the general contractor by the 5th day of each month for the previous month's work, but during this entire period, only one payment (representing payment for the first week's work) of $1,561.50 was received.

Sometime during the first week of February, Tech-Neeks became unable to pay the bills, and the job was shut down. Appellant General Insurance Company of America, surety for Tech-Neeks, was notified, and in April, 1965, assumed its obligation of finishing the project. In the meantime, appellees had moved their men and equipment, and were engaged in other work. L. L. Lounsbury of the Claim Department of the insurance company contacted appellee Francis by telephone on April 19 to determine whether appellees desired to finish their part of the work (under the sub-contract) at Biscoe. According to Francis, he informed Lounsbury that he could not go back on the job unless he received payment on the work already done.[1] The amount of money due appellees (after crediting the $1,561.50) was $6,390.80, and appellant insurance company offered to pay the sum of $3,000.00 on that amount, but wanted to withhold the balance to cover the cost of any corrective work that might be required after the contract was completed. Appellees would not agree to this condition, and instituted suit for the entire amount due. Appellant insurance company employed Wooten Construction Com-

---

[1]Lounsbury testified that Francis also told him that his equipment was on another job, and it would be at least three weeks before he could return to the Biscoe project. Since time was of the essence in the original contract, and liquidated damages were accumulating at the rate of $50.00 per day, Mr. Lounsbury stated that the company needed to complete the job as quickly as possible.

pany to complete the work called for in the sub-contract. On trial, it was admitted by appellants that the reasonable value of the work performed was $7,952.30, but appellants contended that there should be a charge-back of $644.08, that amount having been expended by the surety in repairing leaks on that portion of the lines installed by appellees. After hearing evidence, the court held, *inter alia,* that the general contractor had breached its contract with appellees by failing to make payments, as agreed upon, and that this breach relieved appellees of the obligation to complete the subcontract, and justified them in ceasing performance. The court held that Francis and Poe were due the reasonable value of their work and labor, less any sum already paid, and accordingly entered judgment in the amount of $6,390.80, plus statutory penalty and an attorney's fee in the amount of $1,500.00, making a total judgment of $8,657.69, together with interest at the rate of 6% per annum. From this judgment, appellants bring this appeal. Appellees cross-appeal from the trial court's refusal to allow interest on their claim from the date of the filing of the complaint.

The principal question at issue can be succinctly stated: ''Were appellees entitled to the full amount of monies due under their sub-contract with Tech-Neeks at the time of the general contractor's breach, or were they only entitled to the amount of money due at that time, less any amount expended to correct alleged faulty work (repairing leaks) that had been performed by them?''

Appellant offered the evidence of R. K. Wooten, a general contractor who completed the sub-contract, and J. B. Jones, his foreman on the job, Wooten testifying that $644.08 was expended to correct appellee's faulty work (water leakage), and Jones testifying that there were eight or nine leaks, all underground, one involving a bursted pipe, this occurring because the pipe ''did not have proper sub foundation under it.'' Wooten also offered to testify that the concrete was not poured to support the lines in certain instances, which caused the

joints to separate, and that there were likewise other leaks due to the fact that valves and fittings were not tight. This offer of testimony was refused by the court, and this is asserted as error, which will be subsequently discussed. Both men, as well as Robert W. Thweatt, a registered civil engineer and witness for appellees, testified that it is common for leaks to be found when the line is tested after completion of the work; Thweatt stated that it would be most unusual to construct a system without leakage. We think it is clearly established by the evidence that the mere fact that there are leaks does not mean that the construction work is faulty, and, according to the preponderance of the evidence, it appears that this is ''normal.'' Of course, a line cannot be properly tested for leaks until the job has been completed, and it is customary to test a line, following completion, and then to make corrections.

Appellants rely on the cases of *Thomas* v. *Jackson*, 105 Ark. 353, 151 S. W. 521, *Roseburr* v. *McDaniel*, 147 Ark. 203, 227 S. W. 327, *Hollingsworth* v. *Leachville Special School District*, 157 Ark. 430, 249 S. W. 24, and *Harris* v. *Holder*, 217 Ark. 434, 230 S. W. 2d 645. We do not agree that these cases are in point for the reason that the contracts involved in each of those suits, except Hollingsworth,[2] had been *completed*. It is likewise quite true in the instant case that, if appellees' contract had been completed, they would also, under their agreement, have been required to correct the leaks, and would have been responsible for the cost in making such corrections, but this contract was not completed by appellees—and this was through no fault of their own.

Appellant, Tech-Neeks, breached the agreement when it failed to make the monthly payments as they became due; in fact, it is noteworthy that appellees stayed on the job for over two months, while only receiving payment for one week. As far back as 1899, this

[2]The factual situation in this case is entirely different, the contractor involved having breached his contract with the school district.

court held that one who enters into a contract with another to perform some service, payment to be received in installments, is entirely within his rights, after making partial performance, to abandon further execution of the contract where the other party has failed to pay the installments due, and one may also collect for the work already done at the contract price. *Eastern Ark. Hedge Fence Co.* v. *Tanner,* 67 Ark. 156, 53 S. W. 886. See also *Abel of Arkansas* v. *Richards,* 236 Ark. 281, 365 S. W. 2d 705. In instituting suit, appellees set out the provisions relating to payment under the contract, but this was done as a matter of establishing the reasonable value of the work done to the time of the breach, appellees seeking a recovery on the basis of *quantum meruit.*

To summarize this particular phase of the litigation, appellant, Tech-Neeks, breached its contract with appellees by its failure to make payments on the work performed as it had agreed to do. This breach relieved appellees of any further obligation; furthermore, appellees were entirely within their rights in refusing to continue the contract at the request of appellant, General Insurance Company of America, without first being paid amounts *past due.*

Appellant asserts that the court erred in not admitting the testimony of Mr. Wooten, but under our holding (that appellees were not required to perform after the contract was breached), this is a matter of no importance. If we consider Mr. Wooten's proffered testimony at full value, it cannot change the controlling fact in this litigation—the breach. Not only that, but substantially the same testimony was given by the witness Jones. We have held that exclusion of testimony which is the same as that of other witnesses is harmless error. *Fitzhugh* v. *Leonard,* 179 Ark. 816, 19 S. W. 2d 1010.

The court allowed a $1,500.00 attorney's fee, and appellant contends that this amount is excessive. It is mentioned that no testimony was offered through other at-

torneys as to the amount that would constitute a reasonable fee, but this was not necessary. In *Phoenix Insurance Company of Hartford* v. *Fleenor,* 104 Ark. 119, 148 S. W. 650, this court said:

"It is also true the record does not show that any proof was taken upon the question of a reasonable attorney's fee before one was fixed by the court, but he had the whole matter before him, was familiar with the case, and the service done by the attorneys therein, and we cannot say that there was no evidence warranting his fixing the amount of the fee, which was a matter within the discretion of the court. Neither do we think the amount allowed is excessive."

It is also pointed out in *John Hancock Mutual Life Insurance Company* v. *Magers,* 199 Ark. 104, 132 S. W. 2d 841, that testimony relating to a reasonable fee is only advisory and "by no means conclusive." We do think, however, that the amount allowed in the instant case is adequate for both the work done at the trial level, and in this court, and the request for an additional $300.00 attorney's fee in this court will be denied.

Appellees requested the Chancellor to allow interest on the amount sought by suit (which was recovered) from the date of the filing of the complaint. The Chancellor refused, and we think this was error. Interest at the rate of 6% should have been allowed. *Loomis* v. *Loomis,* 221 Ark. 743, 255 S. W. 2d 671.

In accordance with what has been said, the decree is affirmed on direct appeal, and reversed on cross appeal.

It is so ordered.