ROYAL MANOR APARTMENTS et al
*v.* B. J. POWELL d/b/a B. J. POWELL
CONSTRUCTION COMPANY

75-13                                          523 S.W. 2d 909

Opinion delivered May 27, 1975
[Rehearing denied July 7, 1975.]

*Dickey, Dickey & Drake*, for appellants.

*Coleman, Gantt, Ramsay & Cox*, for appellee.

GEORGE ROSE SMITH, Justice. This is a dispute between a general contractor and one of its subcontractors. In 1973 the principal appellant, Professional Builders & Realty Company, a corporation owned by Leonard Coyle, was the general contractor engaged in the construction of the Royal Manor Apartments, in Jefferson county. Coyle orally subcontracted the foundation and carpentry work to the appellee, B.J. Powell, for the total sum of $112,000.

Under the agreement Powell was entitled to request part payments or "draws" as the work progressed. Powell's first three draws, totaling $52,148, were duly paid. Coyle, however, refused to honor the fourth request, taking the position that the amount sought was excessive and that Powell was not properly performing his contract. Powell then quit the project and brought this suit for $21,712.59 as the balance due for his past performance. After an extended trial the chancellor found that Coyle was at fault in failing to honor the fourth request or at least in failing to enter into negotiations about the amount due. This appeal is from a decree awarding Powell a judgment and lien for $16,290.22 as the amount still due for his part performance of the subcontract.

For reversal Coyle first contends, in substance, that Powell was himself in default when he quit the job, because the delays and other conditions about which he complained were the result of his own defective performance of his subcontract. Neither side questions the controlling rule of law, that a subcontractor's right to abandon his contract for nonpayment of a requested installment depends upon which party was actually in default at the time. *Tech-Neeks* v. *Francis*, 241 Ark. 390, 407 S.W. 2d 938 (1966).

The weight of the evidence supports the chancellor's

conclusion that here it was the principal contractor who was at fault when Powell abandoned the work. Powell testified that other subcontractors failed to do their jobs properly and on schedule, resulting in costly delays in Powell's performance of his own subcontract. Coyle testified that under the Coyle-Powell oral contract it was Powell's responsibility to supervise the project as a whole and to require all subcontractors to stay current in their work. Powell denied having assumed that responsibility.

Powell's version of the parties' understanding is the more reasonable of the two. It was unquestionably Coyle's duty to employ all the subcontractors; Powell had no authority in that respect. Even though Coyle insisted that Powell was to supervise the other subcontractors, Coyle readily admitted that Powell had no real power to discharge that responsibility. This excerpt is from Coyle's testimony:

Q. He [Powell] had no supervision over them, as far as being able to tell them, "Now, I want you out here on this job at 8:00 Monday morning"?

A. Now, that would be part of it, as far as supervision and having them there on time or at the time he wants them.

Q. It would be part of his job to alert them that he needs them there at a certain time?

A. Yes, sir.

Q. But as far as having any authority to order them there or face the consequences, he would not have any sanction he could apply against them if they didn't cooperate?

A. No, sir.

Q. He would be just another subcontractor?

A. Right.

* * * *

Q. Now, if there had been difficulty, Mr. Powell would have contacted you, and you would have dealt with the subcontractor?

A. Yes, sir.

Viewing the record as a whole we agree with the chancellor's belief that the overall progress of the work was the general contractor's responsibility. It follows that Powell was not in default by abandoning his contract owing to adverse conditions over which he had no control.

The appellants' remaining contentions relate to the chancellor's method of computing Powell's damages. Those damages were necessarily hard to prove with precision, because Powell complained of many delays that occurred over a period of several months. The chancellor adopted, we think properly, the view expressed in *Story Parchment Co.* v. *Paterson Parchment Paper Co.*, 282 U.S. 555 (1931):

> It is true that there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount.

What the chancellor did in this case was to base his computation of damages upon the four requested draws made by Powell in the course of the work. The first three requests were paid by Coyle without question, but we do not agree with the appellants' argument that the chancellor treated that fact as establishing an estoppel against the appellants. Instead, we think the chancellor took the requests to be the best proof of Powell's damages. The requests were made contemporaneously as the work progressed, when firsthand information was available. Powell testified that in preparing the re-

quests he inspected the job site and used percentage figures that he had discussed with Coyle. Coyle's ready payment of the first three draws certainly suggests that their amount was not decidedly out of line with the progress of the work. Moreover, the testimony of the witness Ferguson, who made inspections for the agency, that was financing the project, tends to support Powell's figures. Finally, the chancellor reduced the amount of the fourth requested draw from $12,-900 to $8,000, apparently giving some weight to Coyle's general statements that he thought Powell had been overpaid on some of the draws.

In this situation, where a builder or subcontractor has been prevented by the owner or general contractor from completing the work, the courts have recognized two alternative measures of damages. The plaintiff may elect to rely upon the contract and claim the full amount of the agreed price, less what it would have cost him to complete the construction. Or the plaintiff may seek a recovery on a quantum meruit basis, his damages then being the reasonable value of his performance. Corbin, Contracts, § 1094 (1964); Williston, Contracts, § 1454 (3d ed., 1970); Restatement, Contracts, § 346(2) (1932); *Petropoulos* v. *Lubienski*, 220 Md. 293, 152 A. 2d 801 (1959).

Here the chancellor, as we interpret his detailed opinion, adopted the quantum meruit approach and sought to determine the reasonable value of Powell's contribution to the project, above what he had been paid. After studying the record we cannot say that the chancellor's determination of damages is clearly against the preponderance of the evidence. To the contrary, his award appears to effect substantial justice. We note the appellants' suggestion that the cause be remanded with instructions for a new trial, but in chancery cases it is our usual practice to render final judgment upon the proof that the parties have seen fit to introduce. *Wilborn* v. *Elston*, 209 Ark. 670, 191 S.W. 2d 961 (1946). We find no reason to depart from that practice in this case.

Affirmed.