H. Allen GIBSON *v.* Alana G. HEIMAN et al

76-324                                    547 S.W. 2d 111

Opinion delivered March 7, 1977
(Division I)

*Smith, Williams, Friday, Eldredge & Clark,* by: *David A. Orsini,* for appellant.

*McMath, Leatherman & Woods,* by: *Henry Woods,* for appellees.

FRANK HOLT, Justice. In an action on a written contract, appellant sought recovery of fees for his engineering and construction manager services provided to Max Heiman, deceased, in connection with the construction of a project known as Country Club Manor Apartments. Appellees, administrators of the estate of Heiman, denied liability on the basis that the contract was unreasonable and unconscionable. Also appellant had breached the contract by substantial nonperformance and, therefore, any recovery should be on a *quantum*

*meruit* basis. The chancellor found that appellant did not completely perform his contractual duties and appellant, on a *quantum meruit* basis, was adequately paid for his services. Appellant first contends that the findings of fact and conclusions of law and the judgment rendered by the chancellor are unsupported by the evidence and are contrary to the law and the facts.

According to the contract between appellant and Heiman, owner of the apartment project, the appellant was to render engineering services in the nature of planning, designing, assistance in construction loans, including costs and market studies, furnish and submit contract forms to bidders, construction observation and construction management for a fee of ten and one-half percent of the project construction costs, which eventually approximated $4,000,000. The total fee consisted of six and one-half percent for engineering services and four percent for construction management. He claimed he was due the sum of $417,861.93 and interest which represented his fee and additional services. Appellant had been paid $110,000 by Heiman before his death and appellant had also received $80,000 on his fee in settlement of his claim against the mortgagees of the project (a total of $190,000). Appellant argues that he fully performed the services required by the contract and is entitled to be paid according to the contract. The record indicates that the appellant, in the planning stage of his contractual duties, performed various duties of designing, providing specifications and preparing the necessary documents and data. However, there is evidence that appellant's performance was faulty. Through certain design flaws, there developed problems with various apartments of the 210 apartment complex, such as sewage disposal when a storm occurred, lack of usable wall and closet space, improper door hangings, faulty locations of circuit breakers and electrical switches, lack of outside electrical receptacles and a maintenance storeroom, inadequate parking spaces (373 of 406 exist) and other complaints. These deficiencies were a result of poor design and lack of supervision and rendered the apartments difficult to rent.

Under the construction management phase of the contract, appellant's duties were not specified. The contract does

not define the term construction management and is admittedly ambiguous. Since the contract is ambiguous, it is construed most strongly against the party preparing it, here the appellant, and its meaning becomes a question of fact. *Manhattan Factoring Corporation* v. *Orsburn*, 238 Ark. 947, 385 S.W. 2d 785 (1965). Appellant argues that his duties as construction manager involved such things as surveys, obtaining information and governmental approval where necessary and negotiation of subcontractor bids for the general contractor's approval. He contends that the majority of appellant's duties as construction manager were complete at the time of the letting of the general contractor's contract.

Appellant introduced a report of the American Council of Consulting Engineers as an aid in defining the scope and duties of construction management. This document provides, however, that, in addition to design duties in the planning stage, as soon as the construction contract is let, "the construction manager, working as the Owner's Agent, provides general coordination and direction of the work of the various contractors." Although appellant considered his duties as construction manager to deal primarily with financing the project and negotiations of bids, the chancellor felt, and we agree, that the term here, without being limited, requires supervision of construction in a position of authority between the contractors and the owner.

Mr. C. V. Barnes, a real estate developer, defined construction management as "the construction manager would be someone who in effect took the place of an owner, entrepreneur. He would do all the functions that normally an owner-developer would do if such a construction manager were not employed or engaged." According to Jack Morgan, the general contractor for the project, a construction manager should supervise the project personally or his staff personnel on a fulltime basis. This conclusion is supported by a provision in the agreement between Morgan and Heiman wherein it states: "All work shall be done under the general supervision of the engineer."

It is at this stage of his contractual duties that appellant's nonperformance is most evident from the evidence. He admits that he did not supervise the construc-

tion. "I did not supervise. I observed for compliance with the plans and specifications. Mr. Morgan [the general contractor] does the supervising." Further, it appears that appellant has neither the operational facilities nor the staff for day to day management on a project of this magnitude (210 apartments — approximately $4,000,000 in construction costs). Appellant operates alone from a small office and has no fulltime employees.

Mr. Maurice Mitchell, an attorney and co-administrator of Heiman's estate, testified that appellant was uncooperative, incorrect in his information and more interested in financing the project than anything else. He felt that appellant delayed the project for four to five months by his lack of decision making. Tenants were waiting to occupy apartments. He had difficulty in getting appellant's plans for a recreational facility which it appears was never built. He testified: "Every time he [appellant] got between us and a supplier, or a subcontractor, or the contractor, Jack Morgan, we had trouble." Donna McClelland, resident manager of the apartments, testified she had problems in getting appellant to accomplish what was needed of him. There was evidence that she made a punch list consisting of twenty to thirty pages of legal size sheets "of items that were wrong and omitted, that had not been finished." She herself had to ride "herd" on the contractor to get these items corrected and removed from her punch list. Sandra Morrison, an agent for the estate, testified that she had difficulty in getting appellant to act on complaints from the contractor, and she would sometimes have to follow up on them herself. There were problems about the recreational room plans, landscaping and the elevators. A storm caused sewage to back up in some bath tubs and appellant was unresponsive to the situation. Consequently, she had it corrected by calling one of the contractors.

It is well settled that the chancellor's findings of fact will not be reversed unless clearly against the preponderance of the evidence. *Titan Oil & Gas* v. *Shipley,* 257 Ark. 278, 517 S.W. 2d 210 (1974); *Minton & Simpson* v. *McGowan,* 256 Ark. 726, 510 S.W. 2d 272 (1974); and *Bollen* v. *McCarty,* 252 Ark. 442, 479 S.W. 2d 568 (1972). Here the preponderance of the evidence supports the chancellor's findings that appellant did

not fully perform his contract and did not earn in excess of what he was paid ($190,000), on a *quantum meruit* basis, which was about five percent of the construction costs.

The thrust of appellant's second point is that the chancellor erred in not finding according to appellant's request for separate statements and conclusions of law and fact. The chancellor made separate findings of fact and conclusions of law. However, appellant attacks the finding by the court that appellant did not perform the engineering services required of him; appellant was required to supervise the construction of the project; appellant was in a position of authority to some extent over the contractor or subcontractor; construction management was not defined by the contract and that appellant, in this regard, failed to perform the contract; he was not entitled to certain amounts allegedly due for additional engineering services; the fee as sought was unreasonable and exorbitant; appellant did not earn in excess of what he was paid; and he is not entitled to interest, as a matter of law, on the sums he claims are due from the appellees. Findings of fact should be reviewed as a whole and liberally construed to ascertain their sufficiency. 5 Am. Jur. 2d § 844. Here we hold the chancellor's findings, when reviewed as a whole, as previously and subsequently discussed, are clearly supported by a preponderance of the evidence.

Appellant's third contention is that the court erred in permitting the introduction into evidence of the performance or nonperformance of contracts between appellant and other parties not involved in this proceeding and in admitting into evidence construction contracts not relevant to the issues before the court or within the scope of the pleadings. Evidence of two contracts which appellant had with other parties was admitted. The Nichols contract, which appellant was working on at the same time as the Heiman contract, was properly admitted to impeach appellant's testimony that he spent practically 100% of his forty hour work week on the Heiman contract. Also evidence of performance or nonperformance was admissible for the purpose of defining "construction management," inasmuch as the term here was admittedly ambiguous, and the Nichols contract also required appellant to furnish construction management services. See *Wilkes* v. *Stacy*, 113 Ark. 556, 169 S.W. 796 (1914). Further,

here it was relevant to the reasonableness of the fee on a *quantum meruit* basis. Also the Breckenridge contract, an apartment project, and its performance or nonperformance by the appellant, were admissible to show the reasonableness of the fee received by appellant on the Heiman project, since the two projects were similar in nature and contemporaneous in time. In the Breckenridge contract, there was evidence that appellant earned about three percent of the construction cost as a fee for planning and supervising duties. As indicated, there was no error in the admission of the evidence as to these other construction contracts.

Appellant's final point is that "the trial court erred in admitting into evidence over objection irrelevant statements to fees charged by architects and engineers on other projects, all of which were outside the scope of the pleadings and were given without any basis being established as to similarity and services performed or in similarity in the construction contract." We cannot agree. The determination whether a nonexpert witness has sufficient knowledge of the matter in question or has had sufficient opportunity for observation to be qualified to state an opinion lies largely within the sound judicial discretion of the trial judge and is not reviewable on appeal unless so clearly erroneous as to manifest an abuse of discretion. *Farmers Equipment Co.* v. *Miller,* 252 Ark. 1092, 482 S.W. 2d 805 (1972). Here, inasmuch as appellant only performed part of his contract, his recovery is limited to *quantum meruit,* or a reasonable value of the work done. *Coley* v. *Green,* 232 Ark. 289, 335 S.W. 2d 720 (1960); see also *Royal Manor Apts.* v. *Powell Const. Co.,* 258 Ark. 166, 523 S.W. 2d 909 (1975); 98 CJS Work and Labor, §§ 34 and 66 (8) (1957); and Williston, Contracts, § 1459 (3d ed., 1970). Here the testimony complained of was that of Mr. Barnes, who has an educational background in architectural engineering and extensive experience in construction and development. Also Mr. Mitchell, experienced in real estate development since 1955, was permitted to testify. Their testimony, based on their experience in the construction industry, was that the fee paid to a consulting engineer or architect on an apartment complex for plans and supervision is generally six percent or less of the construction cost of building. Generally, a firm's staff is sufficiently large enough to permit fulltime supervision. Here, there was only a one-man firm with no staff per-

sonnel. The evidence clearly shows that these witnesses were sufficiently familiar with architectural and engineering services to present competent testimony as to the fees customarily charged by architects and engineers on other projects of a similar nature. The chancellor did not abuse his discretionary authority in permitting them to testify.

As indicated, the chancellor's findings that appellant failed to fully perform his contractual duties and did not earn in excess of what he was paid, on a *quantum meruit* basis, are supported by the preponderance of the evidence.

Affirmed.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and BYRD, JJ.