ADVANCE CONSTRUCTION CO., INC., and SAFECO INSURANCE CO. OF AMERICA *v.* George DUNN and Joe DUNN, d/b/a DELTA ASPHALT & CONCRETE COMPANY

77-281                                          563 S.W. 2d 888

Opinion delivered April 10, 1978
(Division II)

*Friday, Eldredge & Clark,* by: *David A. Orsini,* for appellants.

*L. David Stubbs,* for appellees.

FRANK HOLT, Justice. The appellees, subcontractors of appellant Advance Construction Company, Inc., a general contractor, sought to recover damages from Advance for its alleged breach of two contracts. The appellant contractor terminated appellees' contract on the basis appellees' asphalt surfacing in certain areas was unsatisfactory and the appellees had failed to complete their work after appellant contractor had given them directions to do so according to specifications. However, according to appellees' evidence, the weather and soil conditions had prevented them from completing their contracts, as requested, and, otherwise, they were able and willing to complete the projects had their contracts not been terminated. This appeal results from separate jury verdicts for the appellees in the amount of $2,600 and $15,000 plus ten percent interest from the filing date of the complaint. Advance Construction first contends that the

court erred in instructing the jury on damages and not directing a verdict in its favor because the appellees did not meet their burden of proof on damages.

With respect to the University of Arkansas at Monticello contract, the total contract price was $31,000 with $13,500 being paid, leaving a balance of $17,500. According to the appellees' evidence, in order to fully complete the work, including repair of defects, it would cost $1,662.50. This work involved the putting down of a 1" overlay or leveling course on one of the lots involved. This would require 95 tons of asphalt at $17.50 per ton, including the cost of laying the asphalt. This cost of completion ($1,662.50) was then subtracted from the balance due ($17,500) on the contract with the difference of $15,837.50 being the amount appellees claim they are entitled to. ($17,500 - $1,662.50 = $15,837.50) As to the Armory project, which was an addendum to the University of Arkansas at Monticello project, appellees testified that nothing had been paid on the contract price of $3,325. They had completed $2,068.56 worth of work. The difference, $1,256.44, between that figure and the contract price of $3,325 is what it would cost to complete the project. However, appellees gave appellant credit for the completion cost and claimed only the $2,068.56 as the balance owed on this project.

On the Sesame School project, the contract price was $9,800. Appellees had been paid $3,600, leaving a balance due of $6,200. According to the appellees, the cost of completion would require 110 tons of asphalt laid at $22.50 per ton. The extra cost per ton resulted since "more hand work" was involved in laying the asphalt on this project. Therefore, the cost of completion was $2,475. This would leave a damage figure of $3,725. ($6,200 - $2,475 = $3,725)

Appellant contractor argues that this evidence as to measure of damages does not meet the formula enunciated in *Reed* v. *Williams, etc.,* 247 Ark. 314, 445 S.W. 2d 90 (1969), and *Robertson* v. *Ceola,* 255 Ark. 703, 501 S.W. 2d 764 (1973), which it interprets to mean that the proper ascertainment of damages must be arrived at by subtracting the incurred and projected expenses from the contract price to arrive at profit and then subtract from the profit the amount paid on the con-

tract to arrive at the balance owed by the contractor. However, we have recognized as proper another formula for determining damages in a breach of contract action. In *Royal Manor Apts. v. Powell Const. Co.*, 258 Ark. 166, 523 S.W. 2d 909 (1975), we stated that when a subcontractor, as here, is prevented by the general contractor from completing the work, "[t]he plaintiff may elect to rely upon the contract and claim the full amount of the agreed price, less what it would have cost him to complete the construction." Here the court instructed the jury to determine appellees' damages, if any, by awarding them the full contract price minus any payments made and minus what it would have cost appellees to complete the construction contracts. The agreed contract price and the progress payments are undisputed. As indicated, appellees offered testimony as to how much it would cost them to complete the construction. Therefore, there was no error in instructing the jury on the measure of damages since appellees' evidence, when viewed most favorably on appeal as we must do, is sufficiently substantial to justify the instruction.

Appellant contractor next asserts the court erred in excluding the evidence of its corporate secretary as to the amount it paid, $7,848.75, to another subcontractor to complete the University of Arkansas at Monticello project. Appellees' cost of completion figure, as indicated, was $1,-662.50. Appellees objected to appellant contractor's evidence on the ground that the evidence was in the nature of a setoff or counterclaim and the appellant contractor should be bound by its pleadings which did not raise that issue as it had in the companion case. Appellant contractor argues here, although not before the trial court, that this evidence was admissible to refute appellees' evidence on the issue of breach and reasonable cost of completion. Appellees also objected on the basis that "the reasonableness of Aries' (subcontractor who completed the asphalting) completion is certainly a new issue" which appellees were unprepared to meet. It appears that, although Aries' cost of completion was made known informally to appellees "many days" before trial, appellees' interrogatories pertaining to Aries' completion were not answered until a week before trial. Aries himself was not presented as a witness who would have been subject to cross-examination. It was appellant contractor's burden to show

the cost of completion by their subcontractor, Aries, rather than what it paid him. In the circumstances we cannot say the trial court abused its discretion in excluding the evidence of appellant contractor's corporate secretary.

Finally, appellant contractor contends the court erred in awarding interest on the verdict at the rate of 10% from the date the complaints were filed. It argues that appellees did not recover exactly the amount demanded in their complaint and further the sum sought was unliquidated; therefore, prejudgment interest should not be awarded. We have approved prejudgment interest where a sum certain was sought. *Loomis v. Loomis*, 221 Ark. 743, 255 S.W. 2d 671 (1953); *Teck-Neeks, Inc. v. Francis, et al*, 241 Ark. 390, 407 S.W. 2d 938 (1966); and *Williams v. Varner,* 253 Ark. 412, 486 S.W. 2d 79 (1972). Art. 19, § 13, Arkansas Constitution (1874), which prohibits interest in excess of 10%, provides for 6% interest on a contract whenever it is silent on the item of interest. In *Teck-Neeks, Inc. v. Francis, supra,* we specifically allowed 6% prejudgment interest citing *Loomis v. Loomis, supra.* Here sums certain were sought by appellees in their complaints for breach of contract. Although the appellees did not recover the sums sought, they are entitled to 6% interest from the date of filing their complaint. See *Loomis v. Loomis, supra.* Ark. Stat. Ann. § 29-124 (Supp. 1977), however, provides for 10% interest following judgment. Consequently, the court erred in awarding 10% prejudgment interest. The judgment is modified to allow 6% prejudgment interest and 10% following judgment.

Affirmed as modified.

We agree: HARRIS, C.J., and FOGLEMAN and BYRD, JJ.

HICKMAN, J., dissents as to the allowance of any prejudgment interest.