Jerry YOUNG et al *v.* Everett H. YOUNG
and Maggie YOUNG

CA 79-183                          593 S.W. 2d 72

Opinion delivered January 9, 1980
Released for publication January 30, 1980

*Franklin Wilder,* for appellants.

*N. D. Edwards,* for appellees.

Ernie E. Wright, Chief Judge. Appellants seek reversal of the decree of the trial court dismissing their complaint for partition of forty acres of land and confirming title solely in appellees.

Various points for reversal are urged by appellants. However, as we conclude the decree should be affirmed on the restoration of a lost deed it is unnecessary to discuss the other points raised by appellants.

Henry Young acquired title to the SW 1/4 of the SE 1/4 of Section 7, Township 11 North, Range 30 West in Crawford County, Arkansas in 1905. Appellants and appellees all claim title through Henry as the common source. In 1918 he mortgaged the 40 acres along with 160 acres of adjoining land to the Federal Land Bank. In 1925 his son, Edward Young, purchased the 160 acres from Henry Young and wife, and

the deed was duly recorded. Appellees, Everett Young and his wife Maggie Young, alleged in their counterclaim that Edward Young also obtained a deed from Henry Young to the forty acres but that it had been lost or destroyed without recording. After hearing extensive testimony the Chancellor found the appellees had proven by the clearest, most conclusive and satisfactory proof that Henry Young and his wife executed and declined a conveyance of the forty acres to Edward Young in 1926, reserving a life estate in themselves, and that the deed had been lost or destroyed and should be restored. Henry Young died in the mid 1930s and his widow died in the early 1950s.

Edward Young and his wife Lucy took possession of the forty acres and exercised exclusive control over it along with the 160 acres after the death of Henry Young's widow. Edward Young died in 1957 and in 1967, Lucy Young executed a deed to the forty acres to Everett Young; and in April 1978 she joined in a deed with the children of her and Edward Young conveying the land to the son, Everett Young.

Everett Young and his wife, Maggie, have exercised exclusive control over the forty acres since 1967 and, while they have not lived upon the land, they have utilized it in various ways, claimed ownership and paid the taxes. The Court found title in appellees was also established by adverse possession.

It is undisputed that appellees have record title to at least a one-half interest in the forty acres, and appellants would have an inherited interest as decedents of Henry Young only if appellees failed to establish a deed was executed and delivered by Henry Young and his wife to Edward Young or failed to establish ownership by adverse possession.

We look then to the evidence before the court supporting the decree finding that a deed conveying the forty acres was in fact executed and delivered in 1926 by Henry Young and his wife to Edward Young.

Lucy Young, widow of Edward Young, age 85, testified

she and her husband bought 160 acres from his father, Henry Young, in 1925 and that in October, 1926, Henry Young and his wife made and delivered a deed to the forty acres in dispute to Edward at Mountainburg and Edward brought the deed home. Edward took over the mortgage payments on the land. Henry and his wife reserved the right to live on the forty until they died. Henry died in 1935 and Cordelia died in 1951. Lucy kept the deed at home. While she was away someone entered the home, tore things up and the deed and box it was in was missing. The deed was sent to the Federal Land Bank and returned when the loan was paid off. Edward made the mortgage payments until 1926 and until the mortgage was paid off in 1948. Numerous receipts from the Federal Land Bank evidencing loan payments by Edward Young were received in evidence, along with a letter from the Bank's affiliate office in Fort Smith dated September 18, 1948, to Edward calling attention that taxes had not been paid on the forty acres and referring to the land as belonging to Edward. At that time Cordelia was still living upon the forty. Edward's brothers and sisters all knew about the deed. She doesn't know why they failed to record the deed. She and her husband took possession of the forty acres after Cordelia Young died, claimed to own it and utilized it with the rest of the farm. The 200 acres was under one fence.

Harrison Young, a brother of Everett, testified his grandfather and grandmother lived on the forty acres until they died, and they recognized his father, Edward Young, and wife as being the owners of the land. His mother had possession of the forty acres after the death of his grandfather and grandmother and it was just part of the one farm. In 1965 he saw the deed for the forty that had been executed by his grandparents to his dad and mother. The deed was in the old home place. He looked for the deed after the house was ransacked but did not find it.

Mrs. Dutton testified she is a sister of Everett Young and that her father, Edward Young, claimed ownership of the forty as far back as she remembers. She worked like a man on the forty to help pay off the mortgage. The mortgage was paid off in 1948 or 49. Her father, Edward Young, had possession of the whole farm including the forty and after

his death her mother had possession. In 1963 her mother showed the deed to the forty acres to her and her husband.

Appellee Everett Young testified he was born on the 160 acres and ownership of the forty by his father had been discussed by family members through the years. In 1975 Jerry Young commented to Everett that he knew he had bought the whole place from his mother and Everett confirmed that he had. Jerry asked if there would be a chance to buy 5 or 10 acres, and gave him a card with his phone number on it. The card was received in evidence. His father and mother and he had paid taxes on the forty acres for many years. He saw the deed in 1953. His dad got the papers out and showed them to him. The deed was stolen or taken by someone. He knew where it was kept in his mother's home. Someone ransacked the place while she was away in Texas. They could not find the papers after that. He has paid the taxes on the forty since 1966, has put up most of the fencing, he and his sons cleared about ten acres nine years ago, he has fruit trees on it, and has been raising corn and vegetables on it. When he bought the land from his mother he did not know the deed from his grandparents to this father had not been recorded until after he had paid for the land.

Katherine Stewart, one of the appellants, testified she took Edward Young's widow, Lucy, to the welfare office in the late 60s or early 70s and she had to have her deeds. They found evidence from the papers this forty acres was in her name. They put it down that she owned the forty acres, and she told them she owned it.

It is well settled the chancellor's findings of fact will not be reversed unless clearly against the preponderance of the evidence. *Gibson* v. *Heiman,* 261 Ark. 236, 547 S.W. 2d 111 (1977).

The testimony as to the execution and delivery of the deed of Henry Young and wife to Edward Young, supported by testimony of various witnesses that they had seen the deed, the long exclusive possession of the land and payment of taxes by Edward Young, his widow and the appellees are sufficient to support the finding of the chancellor that the execution and delivery of the deed and the loss of same was

established by clear, conclusive and satisfactory evidence. *Isgrig* v. *Thomas,* 219 Ark. 167, 240 S.W. 2d 870 (1951); *Carpenter* v. *Jones,* 76 Ark. 163, 88 S.W. 871 (1905).

Affirmed.