B. F. BOWMAN *v.* Tommy C. McFARLIN
and Peggy J. McFARLIN

CA 80-379                                615 S.W. 2d 383

Court of Appeals of Arkansas
Opinion delivered April 29, 1981
[Rehearing denied June 3, 1981.]

236

*Robert R. Cortinez,* for appellant.

*Dewey Moore,* for appellees.

LAWSON CLONINGER, Judge. Appellant, B. F. Bowman, brings this appeal from a jury verdict for appellees, Tommy C. McFarlin and Peggy J. McFarlin, in the amount of $10,000 as damages for breach of contract. Appellant constructed a house for appellees on a lot owned by appellees, and in their complaint appellees alleged damages as a result of defects in construction, unauthorized changes in the agreement, and items not properly installed.

For reversal appellant urges that the trial court committed error by (1) permitting appellee Tommy C. McFarlin to testify as to the value of his services in correcting the

alleged defects, (2) by permitting the testimony of expert witness Ellis Wade Ashe because the witness did not examine the property and his testimony was not in the hypothetical, and (3) by permitting expert witness James A. Bennett to testify when the witness had no reasonable and fair basis for making valuation.

We find that the trial court was correct in its rulings, and we affirm.

Appellees alleged in their complaint that appellant had breached their written contract in the following ways:

(1) The contract provided for the construction of a freestanding garage in the back of the house connected by a breezeway, but the defendant constructed a carport alongside the house with no breezeway.

(2) The contract provided for the construction of three rows of piers underneath the house for support, but the defendant constructed two rows.

(3) The contract provided for the installation of dual heating and air conditioning units but defendant only installed one unit.

(4) The contract provided for a front porch to be ten feet deep, but the defendant constructed the porch six feet deep.

(5) The contract provided for no landscaping, but the defendant pushed down forty trees that were supposed to have been left standing and removed the topsoil on the front of the lot.

(6) The contract provided for a construction cost of $33,000 but the plaintiffs have paid $2,141.40 in addition to the contract price for items that should have been covered by the contract price.

(7) The contract provided for many other items that were not installed or were installed improperly.

Appellee Tommy McFarlin has been an exchange repair technician for a telephone company for twenty-one years, has been an owner of several houses, and had one of his previous houses built. He was permitted to testify that he logged daily the time he and his son worked on the property to correct defects that he alleged were caused by appellant's breach; that he worked a total of 174.5 hours, which he felt was worth $7.50 per hour, and his son worked 39.5 hours, which he felt was worth $3.00 per hour, for a total of $1,427.25. He testified in detail that he and his son cleared debris, tried to level floors, installed insulation, installed drains, and placed temporary supports under the house. Appellant on this appeal objects to Mr. McFarlin's testimony on the grounds that he was not qualified as an expert in the areas in which he was working and that he had no knowledge as to the value of the fees customarily charged. In the trial court, however, appellant objected only to the introduction of a sheet listing the work Mr. McFarlin and his son performed, showing the number of hours worked, and the wage alleged as fair, on the basis that it was of no value to the jury and irrelevant. The trial court properly placed the responsibility on the appellees for establishing to the jury's satisfaction that the work done by the McFarlins was chargeable to the appellant.

We cannot say that there was error in the admission of the testimony of Mr. McFarlin. He was a homeowner, and as the Arkansas Supreme Court said in the case of *Farmers Equipment Company* v. *Miller*, 252 Ark. 1092, 482 S.W. 2d 805 (1972), we are unable to say that the trial court abused its discretion in admitting this testimony. The determination of whether a nonexpert witness has sufficient knowledge of the matter in question or has sufficient opportunity for observation to be qualified to state an opinion lies largely within the sound judicial discretion of the trial judge, and is not reviewable on appeal unless so clearly erroneous as to manifest abuse of discretion. *Gibson* v. *Heiman*, 261 Ark. 236, 547 S.W. 2d 111 (1977). We find no manifest abuse of discretion.

Witness Ashe is in the landscaping and tree business, and he was permitted, as an expert, to give his opinion as to

the replacement cost of the trees allegedly destroyed by appellant. He did not examine the site and his values were determined on the basis of Mr. McFarlin's testimony in the case and upon information given him by Mr. McFarlin prior to this court appearance. Mr. Ashe was told by Mr. McFarlin that forty oak, pine and dogwood trees were destroyed, and that the oaks and pines measured between four inches and twelve inches in diameter. Mr. Ashe set his values on the basis of replacement trees four inches or less in diameter. Appellant urges that the proper measure of damages is the difference in the value of the land with and without the trees and in support of his view he cites a number of Arkansas cases. *Kyle* v. *Zellner*, 215 Ark. 349, 220 S.W. 2d 806 (1949); *St. Louis I.M.&S. Railway Company* v. *Ayers*, 67 Ark. 371, 55 S.W. 159 (1900); *Causey* v. *Wolfe*, 135 Ark. 9, 204 S.W. 977 (1918). The cases cited by appellant all deal with growing timber, and we are aware of no Arkansas case dealing with the proper measure of the damages for destruction of trees valued for their beauty and use as shade trees.

When a building contractor breaches his contract, two measures of damages are commonly used. The first measure, the "cost" rule, is the cost of repairing it where the work is defective. The second measure, the "value" rule, is the difference between the value as it is and the value promised. The choice between the two measures will depend on circumstances. The "cost" rule is generally preferred, if it is economically feasible in the circumstances, because it gives the landowner a money equivalent of what he bargained for by giving him the cost of getting the work properly done. Dobbs, *Law of Remedies* (1973), p. 897. The underlying purpose in awarding damages for breach of contract is to place the injured party in as good position as he would have been had the contract been performed. *Rebsamen Companies, Inc.* v. *Arkansas State Hospital Employees Federal Credit Union*, 258 Ark. 160, 522 S.W. 2d 845 (1975). In *Carter* v. *Quick*, 263 Ark. 202, 563 S.W. 2d 461 (1978), the Arkansas Supreme Court noted with approval the doctrine set out in 5 *Corbin on Contracts* (1964), § 1089, that the cost of curing defects should be the measure whether the breach of the contract is large or small and that it should be applied in every case, except where the actual curing of the defects

would cause unreasonable economic waste. The Court further noted that this view is consistent with the result in the case of *J. E. Hollingsworth and Company* v. *Leachville Special School District*, 157 Ark. 430, 249 S.W. 24 (1923).

We hold in the instant case that the cost or replacement rule was properly applied by the trial court, for the reason that the appellees cannot place a sale value on their trees and that they are entitled to replacement. They testified that they bought the specific lot upon which the house was built because they wanted a wooded setting, and they can be made whole only by replacement of the trees.

The trial court properly allowed witness Ashe to give his opinion on the basis of information he obtained before the trial and information he gained from the testimony of other witnesses during the trial. Questions calling for the opinion of an expert witness are not necessarily subject to objection because they are not in the hypothetical. Rule 703, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), provides that the facts or data in the particular case upon which an expert bases his opinion or inference may be those perceived by or made known to him at or before the hearing. *Campbell* v. *State*, 265 Ark. 77, 576 S.W. 2d 938 (1979).

Witness James A. Bennett was qualified as an expert in appraising and inspecting residential houses. He was also the owner of a construction company which had been inactive for two years, and appellees had requested that he make a bid on a portion of the repair work involving the landscaping and construction of a third pier to support the house. He was permitted to testify as to his appraisal of expenses of repairs, and his estimate of the cost of repairs totaled $19,330. Mr. Bennett was not an engineer, and the trial court sustained objections to questions which called for expertise in the engineering field.

We find that there was a reasonable basis for the testimony of Mr. Bennett. He had inspected the property on three occasions, and although he relied on the appellees' version of the contract provisions, the jury was given the

ultimate responsibility of deciding the issue of damages. As an expert witness he based his opinion as to damages on the plans and special conditions submitted to him on defects and variances, which he observed on three separate inspections. Rule 703, Uniform Rules of Evidence, *supra*.

Affirmed.